IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FEDERAL TRADE COMMISSION, | ) |
|       Plaintiff, | ) |
| | ) |
|    v. | )   Civil Action No. 97-1278 |
| | ) |
| DAVISON ASSOCIATES, INC., | ) |
|  et al., | ) |
|       Defendants. | ) |

ORDER FOR PERMANENT INJUNCTION

AND NOW, this 17th day of March, 2006, for the reasons stated in the accompanying Findings of Fact and Conclusions of Law:

I.   MISREPRESENTATIONS PROHIBITED

It is HEREBY ORDERED that Defendants are enjoined from making, or assisting others in making, any material false representation or material omission in connection with providing any research, patent, marketing, and/or invention-promotion services (collectively "services"), including, but not limited to any misrepresentation that:

> (a) Defendants are selective in deciding to whom services will be offered;
>
> (b) Defendants have a combined stake in the consumer's invention because they "work for free" and/or receive significant income from royalties;
>
> (c) falsely states defendants' track record in terms of number of consumers contracted with, number of consumers

1

realizing a net profit, or number of arms-length licenses obtained;

(d) Defendants' invention-promotion services helped any specific invention ideas become successful products without disclosing whether the consumer realized a net profit;

(e) Defendants have a vast network of corporations with whom they have ongoing relationships and regularly negotiate successful licensing agreements;

(d) Defendants' invention marketing services are necessary for consumers to license their invention ideas; and

(f) Defendants prepare objective and expert analyses of the marketability or patentability of consumers' invention ideas.

For the purposes of this Order, services include both phases of defendants' services and all agreements sold thereunder, including the Contingency Agreement, the Pre-Inventegration Services Agreement, and the Production Sample Presentation Agreement, or any other similar agreements.

II.  AFFIRMATIVE DISCLOSURE STATEMENT

IT IS FURTHER ORDERED that defendants shall furnish a retainable copy of an Affirmative Disclosure Statement to each prospective client within three business days of receipt of the first communication from the client disclosing a new product idea. The Affirmative Disclosure Statement must be set forth in a separate document that contains no other information and must state in a clear and conspicuous manner the following: (1) the total number of consumers who submitted new product ideas to defendants during the five year period ending with the date of the Affirmative Disclosure Statement; (2) the total number of consumers who were offered a Pre-Inventegration Services Agreement (or any similar agreement that results in a patent, market, and/or design portfolio); (3) the total number of consumers who were offered a Contingency Agreement (or any similar agreement under which defendants seek to obtain licensing for a new product idea on behalf of a consumer); (4) the total number of consumers who signed or purchased a Pre-Inventegration Services Agreement (or any similar agreement that results in a patent, market, and/or design portfolio); (5) the total number of consumers who signed a Contingency Agreement (or any similar agreement under which defendants seek to obtain licensing for a new product idea on behalf of a consumer); (6) the total number of consumers who were offered a Production Sample Presentation Agreement (or any similar

Agreement under which a virtual reality or prototype is created); (7) the total number of consumers who signed or purchased a Production Sample Presentation Agreement (or any similar agreement under which a virtual reality or prototype is created); (8) the total number of consumers, unaffiliated with defendants, who obtained a written license with a company or corporation unaffiliated with defendants for their new product; (9) of the consumers who obtained a written license with an unaffiliated company or corporation for their new product, the number of consumers who have made more money from royalties than they have paid, in total, under any and all Agreements, to defendants; and (10) the percentage of defendants' income that has come from royalties paid to defendants under the licenses identified in subsection 8. This Affirmative Disclosure Statement is needed due to defendants' blatant, varied, and repeated misrepresentations regarding their selectivity and success rate, and the importance of royalties to their relationship with consumers. It shall be in addition to and in no way a substitute for any disclosure required under the American Inventors Protection Act, or any other state or federal statute. The information contained in the Affirmative Disclosure Statement shall be current as of a date no more than 60 days prior to the date the Affirmative Disclosure Statement is furnished to the consumer, and that date shall appear on the Affirmative Disclosure Statement.

Defendants shall request that the consumer: (1) acknowledge receipt of the Affirmative Disclosure Statement, in writing, on a duplicate of the Affirmative Disclosure Statement; and (2) return the duplicate document to defendants. Defendants shall not initiate any contact with the prospective client for three business days after furnishing the Affirmative Disclosure Statement to the consumer, and shall not accept any funds from a consumer before receiving the signed, duplicate, acknowledgment of the Affirmative Disclosure Statement.

III. OTHER BUSINESS PRACTICES

    A. Profitability of Specific Products

IT IS FURTHER ORDERED that to the extent defendants feature, refer to, highlight, or advertise specific consumer products or ideas, in conjunction with that reference defendants shall set forth whether the consumer realized a net profit on the product. A net profit occurs where the total royalties paid to the consumer are greater than the total amount of fees paid by the consumer to defendants under any and all Agreements.

IT IS FURTHER ORDERED that if a consumer asks a representative of defendants whether a particular product made a profit, made money, was a commercial success, or any similar question, defendants shall answer the consumer using the same guidelines immediately above. Although defendants may refuse to reveal the

specific amount of money made by the product, defendants shall not refuse to reveal whether or not the product resulted in a net profit to the consumer.

B. <u>Network of or Relationship with Corporations</u>

IT IS FURTHER ORDERED that defendants shall provide consumers with information, in writing, regarding any corporation being "targeted", "matched", or contacted regarding a consumer's idea. This information shall include the number of submissions made to the corporation over the last five years, and the number of licenses entered into with the corporation over the last five years. Although defendants may refuse to reveal the name of the corporation or corporate contact, they shall not refuse to provide the above information.

C. <u>Necessity of Services</u>

IT IS FURTHER ORDERED that defendants shall, before a consumer agrees to purchase a Pre-Inventegration Services Agreement, or other similar agreement under which a portfolio containing market and design research is produced, provide consumers with a statement, in writing, and on a separate piece of paper in substantially the following form:

> Defendants view market and design research to be integral to their Inventegration process. It is defendants' opinion that such research is necessary before proceeding to the step of attempting to obtain a license for a product with

6

a corporation. It is defendants' policy to require that such research be performed prior to moving forward toward licensing. Should the consumer not wish to purchase the research services, he may still be able to secure a license, either on his own or with the assistance of another party, but defendants will refuse to work with that consumer.

IT IS FURTHER ORDERED that defendants shall, before a consumer agrees to purchase a Production Sample Presentation Agreement, or other similar agreement under which a virtual reality or prototype is created, provide consumers with a statement, in writing, and on a separate piece of paper in substantially the following form:

> Defendants view the production of a virtual reality model and/or prototype to be integral to their Inventegration process. It is defendants' opinion that these models are necessary before proceeding to the step of attempting to obtain a license for a product with a corporation. It is defendants' policy to require that such models be created prior to submitting a new product idea to a corporation. Defendants do not represent that it is any particular corporation's policy to require that such models be created before a new idea will be considered. Should the consumer not wish to purchase these services, he may still be able to secure a license, either on his own or with the assistance of another party, but defendants will refuse to work with that consumer.

D. <u>Patentability and Marketability Analysis</u>

IT IS FURTHER ORDERED that preceding any section in a Pre-Inventegration Report, or other similar report, that includes copies of, or refers to specific patents, defendants shall state, in all capital letters, the following: WE ARE NOT PROVIDING YOU WITH AN OPINION OF PATENTABILITY. SUCH AN OPINION MAY BE REQUIRED IN THE FUTURE. THIS INFORMATION IS PROVIDED

ONLY TO ASSIST IN THE DESIGN PROCESS.

IT IS FURTHER ORDERED that preceding any section in a Pre-Inventegration Report, or other similar research report, that includes copies of, or refers to research regarding similar, competing, or conflicting products, defendants shall state, in all capital letters, the following: WE ARE NOT PROVIDING YOU WITH AN OBJECTIVE OR EXPERT OPINION OF MARKETABILITY OR OF THE POTENTIAL COMMERCIAL SUCCESS OF OR POTENTIAL MARKET FOR A PARTICULAR PRODUCT. THIS INFORMATION IS PROVIDED ONLY TO ASSIST IN THE DESIGN PROCESS.

IV. CONSUMER REDRESS

IT IS FURTHER ORDERED that defendants shall transfer to the Federal Trade Commission ("Commission") the funds required under the final judgment no later than sixty (60) days after the date of entry of this Order by the Court.

In the event of any default on any obligation to make payment under this part, interest computed pursuant to 28 U.S.C. §1961(a) shall accrue from the date of default to the date of payment.

The funds paid pursuant to this section shall be paid into a redress fund administered by the Commission and approved by the court. Such redress is intended to be compensatory in nature, and no portion of such payment shall be deemed a payment

of any fine, penalty, or punitive assessment. If redress to purchasers is wholly or partially impracticable, any remaining funds shall be paid to the United States Treasury.

V.   MONITORING

IT IS FURTHER ORDERED that in order to facilitate the redress fund and the Commission's monitoring of compliance with the provisions of this Order, the defendants shall, for a period of five (5) years after the date of entry of this Order:

(1) Notify the Commission in writing, within thirty (30) days after service of this Order, of the current residence address and employment status of each individual defendant, including the name and business address of their current employers;

(2) Notify the Commission in writing, within thirty (30) days of any change in such address, providing any such new contact information;

(3) Notify the Commission in writing, within thirty (30) days of any change in employment status, providing the details of any new position;

(4) Notify the Commission in writing, within thirty (30) days prior to the effective date of any proposed change in the structure of any business entity owned or controlled by any defendant;

(5) Upon seven days notice from the Commission, permit duly authorized representatives of the Commission access during normal business hours to the offices of any company under any defendant's control, to inspect or copy any documents belonging to any defendant or any company controlled or owned by any defendant that are relevant to any conduct subject to this Order;

(6) Refrain from interfering with duly authorized representatives of the Commission who wish to interview any of defendants' employers, agents, or employees (who may have counsel present) relating in any way to any conduct subject to this Order;

(7) Upon thirty (30) days written notice by a duly authorized representative of the Commission, submit written reports (under oath, if requested) and produce documents with respect to any conduct subject to this Order;

(8) appear on fifteen (15) days notice for deposition with respect to any conduct subject to this Order;

(9) within ten (10) days of the entry of this Order, provide to all current employees, and within ten (10) days of their first day of employment deliver to all future employees, a copy of this Order, and secure from each such employee a signed, dated statement, in

writing, acknowledging receipt of such copy, which statement shall be maintained for a period of five (5) years and made available to the Commission for inspection and copying, upon written request.

Provided further that the Commission may otherwise monitor defendants' compliance with this Order by investigators posing as consumers, potential inventors, suppliers, and other entities, to the same extent to which such means would be lawful were the Commission or the Commission's attorneys not aware of any representation of such defendants by counsel.

## VI.   MAINTENANCE OF RECORDS

IT IS FURTHER ORDERED that defendants shall, for five (5) years after the date of this Order, maintain and upon request make available to the Commission for inspection and copying:

(1) All advertisements, promotional materials, sales scripts, operations manuals, and client communications;

(2) All materials that were relied upon in creating the above materials;

(3) All materials that contradict, qualify, or call into question the above materials, including complaints or other communications with customers or with governmental or consumer protection organizations;

    (4)    All materials relied upon to create the Affirmative Disclosure Statement;

    (5)    Copies of consumers' signed acknowledgments of the Affirmative Disclosure Statement; and

    (6)    Copies of employees' signed copies of this Order.

## VII. REPORT

IT IS FURTHER ORDERED that within sixty (60) days after the date of entry of this Order, defendants shall file a report with the Commission setting forth the manner in which they have complied with this Order

## VIII. COSTS AND ATTORNEYS' FEES

IT IS FURTHER ORDERED that each party to this Order shall bear its own costs and attorneys' fees incurred in connection with this action; provided however, that in the event the Commission initiates proceedings to enforce the provisions of this Order and the Court determines that any defendant has violated any term of this Order, defendants shall jointly pay reasonable costs and attorneys fees incurred by the Commission in connection with the proceedings to enforce the Order.

IX.  JURISDICTION

IT IS FURTHER ORDERED that jurisdiction is retained by this Court for the purpose of enabling the parties to apply at any time for further orders and directions as may be necessary or appropriate for the interpretation or modification of this Order, for the enforcement or compliance thereof, or for the punishment of violations thereof.  The Clerk of Court shall mark the instant case administratively closed.

BY THE COURT:

_____, J.

cc:  All Counsel of Record