# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

FEDERAL TRADE COMMISSION,    )     **CIVIL ACTION NO. 97-1278**

                )

         Plaintiff,     )     **Judge Gary L. Lancaster**

       v.                )     **UNDER SEAL**

                )

**DAVISON & ASSOCIATES, INC.,**    )     **REDACTED**

*et al.,*                    )

                )

         Defendants.    )

## CONSENT ORDER FOR PERMANENT INJUNCTION

Plaintiff Federal Trade Commission ("Commission" or "FTC") filed a complaint in this

matter on July 15, 1997, seeking a Permanent Injunction and other relief, including redress to

consumers, pursuant to Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b).

After a trial on the merits, this Court found in favor of the Commission and Ordered Defendants to

pay consumer redress. Defendants timely appealed that ruling. Now Plaintiff, Defendants, and the

Relief Defendant, hereby stipulate to the entry of, and request this Court to enter, this Consent Order

for Permanent Injunction to resolve all matters of dispute between them in this action without further

appellate proceedings.

### FINDINGS

The parties stipulate and agree that:

1.     For the purposes of this Order, "Defendants" means Davison & Associates, Inc., now

doing business as Davison Design & Development, Inc., Manufacturer's Support Services, Inc.,

George M. Davison III, Gordon M. Davison, and Barbra M. Davison, formerly known as Barbra

Miele; "Relief Defendant" means Barbara L. Davison. "Corporate Defendants" means Davison &

Associates, Inc., now doing business as Davison Design & Development, Inc., and Manufacturers's

Support Services, Inc. "Individual Defendants" means George M. Davison III, Gordon M. Davison and Barbra M. Davison, formerly known as Barbra Miele.

2.      Defendants and Relief Defendant acknowledge that they have read the provisions of this Order and have agreed to abide by them. Defendants and Relief Defendant consent freely and without coercion to entry of this Consent Order for Permanent Injunction in the interest of settling this litigation, and acknowledge that they understand the provisions of this Order and are prepared to abide by its terms. At all times, Defendants and Relief Defendant have been represented by counsel, including during the negotiations that led to this Order.

3.      Defendants and Relief Defendant waive all rights to seek appellate review or otherwise challenge or contest the validity of this Order.

4.      Defendants and Relief Defendant waive and release any claim they may have against the Commission and its employees, representatives, or agents.

5.      Defendants and Relief Defendant waive all rights they may have under the Equal Access to Justice Act, 28 U.S.C. § 2412.

6.      This Order is remedial in nature and shall not be construed as the payment of a fine, penalty, punitive assessment, or forfeiture.

7.      To ensure an expeditious liquidation of non-cash assets involved in the settlement, the appointment of a liquidating receiver is appropriate.

8.      Entry of this Order is in the public interest.

### ORDER

### I.      MISREPRESENTATIONS PROHIBITED

**IT IS HEREBY ORDERED** that Defendants are enjoined from making, or assisting others in making, any material false representation or material omission in connection with providing any

research, patent, marketing, and/or invention-promotion services (collectively "services"), including, but not limited to any misrepresentation that

    (a)    Defendants are selective in deciding to whom services will be offered;

    (b)    Defendants have a combined stake in the consumer's invention because they "work for free" and/or receive significant income from royalties;

    (c)    falsely states Defendants' track record in terms of number of consumers contracted with, number of consumers realizing a net profit, or number of arms-length licenses obtained;

    (d)    Defendants' invention-promotion services helped any specific invention ideas become successful products without disclosing whether the consumer realized a net profit;

    (e)    Defendants have a vast network of corporations with whom they have ongoing relationships and regularly negotiate successful licensing agreements;

    (f)    Defendants' invention marketing services are necessary for consumers to license their invention ideas; and

    (g)    Defendants prepare objective and expert analyses of the marketability or patentability of consumers' invention ideas.

For the purposes of this Order, services include both phases of Defendants' services and all agreements sold thereunder, including the Contingency Agreement, the Pre-Inventegration Services Agreement, and the Production Sample Presentation Agreement, or any other similar agreements.

## II.    AFFIRMATIVE DISCLOSURE STATEMENT

**IT IS FURTHER ORDERED** that Defendants shall post on any website offering or advertising services and shall furnish a retainable copy of an Affirmative Disclosure Statement to each prospective client prior to or within three business days of receipt of the first communication from the client disclosing a new product idea. The Affirmative Disclosure Statement is "furnished"

under this Order once it is either hand-delivered or placed in the U.S. mail, postage prepaid and addressed to the prospective client. The Affirmative Disclosure Statement must be set forth in a separate document that contains no other information and must state in a clear and conspicuous manner the following information, current for the five-year period ending with the date of the Affirmative Disclosure Statement: (1) the total number of consumers who submitted new product ideas to Defendants; (2) the total number of consumers who were offered a Pre-Inventegration Services Agreement (or any similar agreement that results in a patent, market, and/or design portfolio); (3) the total number of consumers who were offered a Contingency Agreement (or any similar agreement under which Defendants seek to obtain licensing for a new product idea on behalf of a consumer); (4) the total number of consumers who signed or purchased a Pre-Inventegration Services Agreement (or any similar agreement that results in a patent, market, and/or design portfolio); (5) the total number of consumers who signed a Contingency Agreement (or any similar agreement under which Defendants seek to obtain licensing for a new product idea on behalf of a consumer); (6) the total number of consumers who were offered a Production Sample Presentation Agreement (or any similar Agreement under which a virtual reality or prototype is created); (7) the total number of consumers who signed or purchased a Production Sample Presentation Agreement (or any similar agreement under which a virtual reality or prototype is created); (8) the total number of consumers, unaffiliated with Defendants, who obtained a written license with a company or corporation unaffiliated with Defendants for their new product; (9) of the consumers who obtained a written license with an unaffiliated company or corporation for their new product, the number of consumers who have made more money from royalties than they have paid, in total, under any and all Agreements, to Defendants; (10) the percentage of Defendants' income that has come from royalties paid to Defendants under the licenses identified in subsection 8; and, (11) the following

4

statement in bold type, "**The total number of consumers in the last five years who made more money in royalties or sales proceeds than they paid to Davison, in total, under any and all agreements with Davison, is _____. The percentage of Davison's income that came from royalties paid on licenses of consumers' products in the last five years is ____ %.**" The disclosure shall be in addition to and in no way a substitute for any disclosure required under the American Inventors Protection Act, or any other state or federal statute. The information contained in the Affirmative Disclosure Statement shall be current and accurate as of a date no more than 60 days prior to the date the Affirmative Disclosure Statement is furnished to the consumer, and that date shall appear on the Affirmative Disclosure Statement. For the purposes of this paragraph, "consumer" shall mean any purchaser of any service that Defendants routinely offer.

Defendants may include in the Affirmative Disclosure Statement the following text, "Davison does not provide evaluations of commercial potential; thus, it has provided no positive or negative evaluation of this or any other product idea in the last five years."

Defendants shall request that the consumer: (1) acknowledge receipt of the Affirmative Disclosure Statement, in writing, on a duplicate of the Affirmative Disclosure Statement; and (2) return the duplicate document to Defendants. Defendants shall not initiate any contact with the prospective client for three business days after furnishing the Affirmative Disclosure Statement to the consumer, and shall not accept any funds from a consumer before receiving the signed, duplicate, acknowledgment of the Affirmative Disclosure Statement. Nothing in this paragraph shall prevent Defendants from sending an electronic acknowledgment of receipt of a product idea to any consumer who submits an idea via the internet or email, as long as such automated acknowledgment contains no promotional or advertising material.

5

In the alternative to furnishing an Affirmative Disclosure Statement via hand delivery or mail, Defendants may furnish an Affirmative Disclosure Statement to prospective clients who submit their new product ideas via an internet website by utilizing technology that provides a printable and retainable electronic version of the Affirmative Disclosure Statement to prospective clients. The technology employed must block Defendants from receiving the product idea unless the prospective client has received the Affirmative Disclosure Statement and has affirmatively acknowledged receipt of the Affirmative Disclosure Statement by marking an electronic box on the statement or idea submission form. If this method of delivery of the Affirmative Disclosure Statement is employed, Defendants are not required to obtain a signed copy of the Affirmative Disclosure Statement from the consumer prior to accepting funds from the consumer, but must still refrain from contacting or accepting funds from any prospective client for three business days after the prospective client acknowledges receipt of the Affirmative Disclosure Statement.

The affirmative disclosure statement shall appear on Defendants' Web site under a heading, link, or tab that is visible on the Defendants' homepage and is labeled "Court ordered disclosure statement." The statement itself shall be labeled with a heading, all in capital letters, "AFFIRMATIVE DISCLOSURE STATEMENT," to be followed by the following statement, in bold type, **"You should read all of this information carefully before proceeding."**

## III. OTHER BUSINESS PRACTICES

### A. Profitability of Specific Products

**IT IS FURTHER ORDERED** that Defendants shall not feature, refer to, highlight, or advertise specific consumer products where the consumer did not realize net profits on the product, unless in conjunction the Defendants set forth that the consumer did not realize a profit on the product. A net profit occurs where the total royalties paid to the consumer are greater than the total

6

amount of fees paid by the consumer to Defendants under any and all Agreements. This provision applies to communications to consumers for the purpose of enticing consumers to utilize Defendants' services and specifically does not apply to communications intended for the sale or license of a consumer's product idea or finished product to a potential licensee or directly to the public.

**IT IS FURTHER ORDERED** that if a consumer asks a representative of Defendants whether a particular product made a profit, made money, was a commercial success, or any similar question, Defendants shall answer the consumer using the same guidelines immediately above. Although Defendants may refuse to reveal the specific amount of money made by the product, Defendants shall not refuse to reveal whether or not the product resulted in a net profit to the consumer.

### B.    Network of or Relationship with Corporations

**IT IS FURTHER ORDERED** that Defendants shall provide consumers with information, in writing, regarding any potential licensee being "targeted," "matched," or contacted regarding a consumer's idea. This information shall include the number of submissions made to the potential licensee over the last five years, and the number of licenses entered into with the potential licensee over the last five years. Although Defendants may refuse to reveal the name of the potential licensee or their contact at the potential licensee, they shall not refuse to provide the above information. The information disclosed to consumers shall be current as of a date not more than 60 days prior to the date that the information is mailed to the consumer.

### C.    Necessity of Services

**IT IS FURTHER ORDERED** that Defendants shall, before a consumer agrees to purchase a Pre-Inventegration Services Agreement, or other similar agreement under which a portfolio

7

containing market and design research is produced, provide consumers with a statement, in writing, and on a separate piece of paper in substantially the following form: Defendants view market and design research to be integral to their Inventegration process. It is Defendants' opinion that such research is necessary before proceeding to the step of attempting to obtain a license for a product with a corporation. It is Defendants' policy to require that such research be performed prior to moving forward toward licensing. Should the consumer not wish to purchase the research services, he may still be able to secure a license, either on his own or with the assistance of another party, but Defendants will refuse to work with that consumer in nearly all cases.

IT IS FURTHER ORDERED that Defendants shall, before a consumer agrees to purchase a Production Sample Presentation Agreement, or other similar agreement under which a virtual reality or prototype is created, provide consumers with a statement, in writing, and on a separate piece of paper in substantially the following form:

Defendants view the production of a virtual reality model and/or prototype to be integral to their Inventegration process. It is Defendants' opinion that these models are necessary before proceeding to the step of attempting to obtain a license for a product with a corporation. It is Defendants' policy to require that such models be created prior to submitting a new product idea to a corporation. Defendants do not represent that it is any particular corporation's policy to require that such models be created before a new idea will be considered. Should the consumer not wish to purchase these services, he may still be able to secure a license, either on his own or with the assistance of another party, but Defendants will refuse to work with that consumer.

D.     Patentability and Marketability Analysis

IT IS FURTHER ORDERED that preceding any section in a Pre-Inventegration Report, or other similar report, that includes copies of, or refers to specific-patents, Defendants shall state,

8

in all capital letters, the following: WE ARE NOT PROVIDING YOU WITH AN OPINION OF PATENTABILITY. SUCH AN OPINION MAY BE REQUIRED IN THE FUTURE. THIS INFORMATION IS PROVIDED ONLY TO ASSIST IN THE DESIGN PROCESS.

**IT IS FURTHER ORDERED** that preceding any section in a Pre-Inventegration Report, or other similar research report, that includes copies of, or refers to research regarding similar, competing, or conflicting products, Defendants shall state, in all capital letters, the following: WE ARE NOT PROVIDING YOU WITH AN OBJECTIVE OR EXPERT OPINION OF MARKETABILITY OR OF THE POTENTIAL COMMERCIAL SUCCESS OF OR POTENTIAL MARKET FOR A PARTICULAR PRODUCT. THIS INFORMATION IS PROVIDED ONLY TO ASSIST IN THE DESIGN PROCESS.

### E.    Total Cost Information

**IT IS FURTHER ORDERED** that Defendants shall not accept any funds from a consumer unless Defendants have provided to the consumer a written statement setting forth the various types of contracts typically offered to consumers and the specific consideration to Defendants for each contract, if known, or a reasonable range or estimate of consideration to be paid to Defendants, if specific consideration is not yet known, and a summary of the services to be performed under each such contract for services.

## IV.    MONETARY JUDGMENT AND CONSUMER REDRESS

**IT IS FURTHER ORDERED** that:

A.    Defendants are liable to the Commission for twenty-six million dollars ($26,000,000), except that Defendant Barbra M. Davison is liable to the Commission for eight million dollars ($8,000,000), and the Commission is awarded a monetary judgment in those amounts. *Provided, however,* that this judgment shall be satisfied upon Defendants' completion of the following:

1.    Within thirty (30) days of the entry of this Consent Order, payment to the Commission of three million, ninety-two thousand, three hundred and seventy-six dollars ($3,092,376) through wire transfer per FTC instruction;

2.    Within thirty (30) days of the entry of this Consent Order, waiver of all claims to, unconditional release and consent to transfer to the Commission, through wire transfer per FTC instruction, all funds held by the United States District Court for the Western District of Pennsylvania pursuant to the Rule 67 Order entered by the Court on or about July 26, 2006. The bond consists of two million, nine hundred thirty-four thousand, three hundred and thirty dollars ($2,934,330) plus any accrued interest less any deductions permitted by Fed. R. Civ. P. 67.

3.    Within thirty (30) days of the entry of this Consent Order, waiver of all claims to, unconditional release of, and consent to transfer to the Receiver appointed in Paragraph VI below, possession of George Davison's stock in Gateway Bank and the limited partnership interests in the Huntley & Huntley Partnerships, as described in Defendants' March 22, 2007 statements of finances. Defendant George Davison shall cooperate fully with the Receiver and take such other steps as the Receiver may require to transfer all dominion, control, and legal and equitable title to all property transferred, including executing any documents and providing any necessary information.

4.    Within thirty (30) days of the entry of this Consent Order, Defendants shall vacate and transfer possession to the Receiver appointed in Paragraph VI below possession of the Defendants' real properties, as described in Defendants' March 22, 2007 statements of finances, located at (a) ▮▮▮▮▮▮▮▮▮▮, (b) ▮▮▮▮▮▮▮, and (c) ▮▮▮▮▮▮▮▮▮, with the Defendants responsible for procuring the signatures of any person or entity under their control necessary for the Receiver to convey legal and marketable title to the real properties. Defendants shall cooperate fully with the Receiver and take such other steps as the Receiver may require to

transfer all dominion, control, and legal and equitable title to all property transferred, including executing any documents and providing any necessary information as the receiver may reasonably request. Defendants represent that no encumbrances to these properties have been added and there have been no additions to existing encumbrances since March 22, 2007. Defendants shall not add encumbrances nor increase existing encumbrances after transferring possession of the properties to the Receiver. Nothing in this Order requires Defendants to pay any amount relating to or concerning the above described properties, including but not limited to taxes, mortgages, homeowner's insurance, homeowner's assessments, maintenance and similar fees, after Defendants have vacated and transferred possession of the above described properties to the Receiver, except for those obligations that are due on or before the date of transfer of possession. The transfer of possession occurs when Defendants vacate the properties, deliver all keys and security codes, if any, to the Receiver and deliver to the Receiver written notice that possession of the properties is surrendered.

5.     Within one hundred and twenty days (120) payment to the Commission of an additional eight hundred and forty-eight thousand, five hundred and seventy-nine dollars ($848,579) through wire transfer per FTC instruction; *provided further* that until such payment is made:

a.     Defendants shall maintain all of their residential properties not subject to the Receivership described in Paragraph VI, including all structures, fixtures and appurtenances thereto in the same condition as they existed on the date of entry of this Consent Order;

b.     Defendants shall remain current on all amounts due and payable on the residential properties not subject to the Receivership described in Paragraph VI,, including but not limited to mortgage, tax, homeowner's assessments, maintenance and similar fees;

6.     Unless Defendants have done so already, in accordance with 31 U.S.C. § 7701, furnishing to the Commission their taxpayer identification numbers (Social Security

Numbers and employer identification numbers) which shall be used for purposes of collecting and reporting on any delinquent amount arising out of Defendants' relationship with the government.

7. Transferring to the Commission a list of the names, last-known addresses, and net amounts paid to Defendants of all customers of Defendants' invention services up to March 17, 2006.

B. Any and all funds paid pursuant to this Order, including this Paragraph IV and Paragraphs V and VI, shall be deposited into a fund administered by the Commission or its agent to be used for equitable relief, including, but not limited to, consumer redress and any attendant expenses for the administration of any redress fund. In the event that redress to purchasers is wholly or partially impractical, or any funds remain after redress is completed, the Commission may apply any remaining funds to such other equitable relief (including consumer information remedies) as it determines to be reasonably related to Defendants' practices alleged in the Complaint. Any funds not used for such equitable relief shall be deposited in the United States Treasury as disgorgement. Defendants shall have no right to contest the manner of distribution chosen by the Commission, but the Commission shall within thirty (30) days of making any redress payment provide Defendants the name, address, and amount paid to each redress recipient. Defendants hereby forever waive, release, discharge, and disclaim all right, title and interest, including any homestead, in the property transferred under this Paragraph. The Commission in its sole discretion may use a designated agent to administer consumer redress.

V.   **RIGHT TO REOPEN**

**IT IS FURTHER ORDERED** that:

A. The Commission's agreement to this Final Order is expressly premised upon the financial condition of Defendants as represented in the sworn financial statements and supporting

12

documents they provided dated March 22, 2007, and on the monthly financial statements Defendants provided to Plaintiff pursuant to this Court's Order dated May 12, 2005, as modified by stipulation of the parties, all of which include material information upon which the Commission relied in negotiating and consenting to this Final Order.

B.     If, upon motion by the Commission, this Court finds that one or more Defendants failed to disclose any material asset, or materially misrepresented the value of any asset, or made any other material misrepresentation in or omission from the financial information they provided to Plaintiffs, or violated the tax-deduction provisions set forth in Subparagraph V.D. below, the Court shall terminate the suspension of the monetary judgment as to the offending Defendants and the entire judgment amount of $26,000,000, less any amount already paid to the Commission, shall be immediately due and payable by those Defendants jointly and severally, together with interest computed at the rate prescribed under 28 U.S.C. § 1961, as amended; *provided however,* that Defendant Barbra M. Davison's liability shall not exceed $8,000,000; *provided further* that in all other respects this Order shall remain in full force and effect unless otherwise ordered by the Court. Once completed, the transfer of the property described in paragraphs IV.A.1-5 constitutes the transfer of property valued in excess of Barbra M. Davison's maximum liability under this Order and is satisfaction, for her alone, of any future monetary judgment under this sub-paragraph.

C.     Any proceedings instituted under this Section are in addition to and not in lieu of any other civil or criminal remedies as may be provided by law, including any other proceedings Plaintiff may initiate to enforce this Order.

D.     In agreeing to this Order and to the amount of the funding that Defendants are to provide to the redress program described in this Order, the Commission has specifically relied on representations by Defendants regarding state and federal taxes they paid and will pay for the tax

13

years 2003 – 2006, and the amount of estimated taxes, if any, that they have paid or will pay toward estimated taxes for tax year 2007, including but not limited to representations in the documents referenced in Subparagraph V.A., above. Defendants agree that they will not, whether acting directly or through any corporation, partnership, subsidiary, division, trade name, device, or other entity, submit to any federal or state tax authority any return, amended return, or other official document that takes a deduction for, or seeks a tax refund or other favorable tax treatment for, any payments by one or more of the Defendants pursuant to Paragraphs IV or V of this Order; *provided however,* that Defendants shall be permitted to take a deduction or deductions for payments made under this Order of no more than one million eight hundred thousand dollars ($1,800,000) on their federal and state tax returns; *provided however,* that nothing in this Subparagraph shall be construed as a position of the Commission on the merits or validity of any such deduction for federal or state tax purposes.

To monitor compliance with this Subparagraph, each Defendant agrees that within ten (10) days of a request by the Commission to that Defendant, that Defendant will complete, sign, date, and submit to the Internal Revenue Service, along with the IRS fee, an IRS Form 4506 for each year 2006, 2007, and 2008, directing that Defendant's federal tax returns and any amended returns for that respective year to be sent to Associate Director, Division of Enforcement, Bureau of Consumer Protection, Federal Trade Commission, 600 Pennsylvania Avenue, N.W., Washington DC 20580. For each year 2006, 2007, and 2008, the Commission may make a request under this Subparagraph at any time up to sixty (60) days after the last date for filing an amended federal tax return for that respective year.

14

## VI.    APPOINTMENT AND DUTIES OF LIQUIDATING RECEIVER

**IT IS FURTHER ORDERED THAT** Baker Young Corporation, a Pennsylvania Corporation with offices located at One Bigelow Square, Suite 629, Pittsburgh, Pennsylvania 15219, shall be appointed as receiver (hereinafter the "Receiver") for the following:

A.    Defendant George Davison's stock in Gateway Bank and the limited partnership interests in the Huntley and Huntley Partnerships, as described in Defendants' March 22, 2007 statements of finances ("Personal Property"); and

B.    Real property and improvements of the defendants more commonly known as ███

███████████████████████████ ("Real Property") (All Personal Property and Real Property, collectively, "the Property").

C.    The Receiver shall take all necessary action to procure a General Liability and Casualty Policy of Insurance ("the Policy") naming itself and the Federal Trade Commission ("FTC") as named insureds and the Receiver shall furnish to FTC a Certificate of Insurance reflecting the FTC's status as a named insured under the Policy, along with a copy of the Policy itself. The Receiver shall maintain said Policy for so long as the Receiver continues its duties as a Receiver under the Court's Order.

D.    In carrying out its duties under this Court Order, the Receiver shall provide management and operation services consistent with property and management practices for real properties of comparable type, class, age and condition in the Pittsburgh market.

E.    The Receiver is authorized to conduct investigations of, and analyses concerning, the operation of the Property and to assume responsibility for all management and operation functions of the Property including, but not limited to, the collection of property revenues, the making of disbursements for operating expenses as may be appropriate, with authority to undertake repairs and

15

to hire and/or dismiss personnel as may be required in order to efficiently operate the Real Property and to maintain its value.

     F.     The Receiver shall have all necessary powers to operate and otherwise manage the Real Property including, without limitation, the following powers and responsibilities:

     1.     to take possession of the Property and all personalty located thereon, including without limitation, all related books, records, bank accounts, keys, equipment and such other personalty as may be found on or off the Real Property which relate in any manner to the management or operation of all or any portion of the Real Property;

     2.     to supervise and oversee the operation and management (including making mortgage payments and paying taxes as and when the receiver has funds available from the income supplied by, or the from the liquidation of, the other assets surrendered to the Receiver under this Consent Order) of the Property;

     3.     to employ such counsel, accountants or other professionals, contractors, building management specialists and support personnel and other such persons as may be necessary in order to carryout its duties as Receiver and to preserve, maintain and repair the Real Property, making payment for the proper compensation of such entities and/or individuals from the operating revenues generated by the Real Property;

     4.     to determine or abrogate, in the Receiver's sole sound business discretion, any or all agreements, contracts, understandings or commitments entered into by any Defendant with respect to the Real Property, to the extent permitted by applicable law;

     5.     to open new accounts with, or negotiate, compromise or otherwise modify the Defendants' existing obligations to utility companies or other service providers or suppliers of goods and services to the Real Property and to otherwise enter into such agreements, contracts or

16

understandings with such utility companies or other service providers or suppliers as are necessary to maintain, preserve and protect the Real Property;

      6.     to open new bank accounts with respect to the Receiver's management and operation of the Property; and

      7.     to apply to this Court for further directions and for such further powers as may be necessary to enable the Receiver to fulfill its duties.

    G.     Any and all sums collected by the Receiver over and above those necessary to operate the Property or those necessary to make payments authorized by this Order shall be paid to the FTC as directed by the FTC at the termination of the Receivership.

    H.     The Receiver shall keep a true and accurate account of any and all receipts and expenditures and periodically file with the Court a Management Report under oath, accurately identifying all such revenues received and expenditures made, including adequately detailed information concerning income, expenses, payables and receivables. These periodic filings shall be served by the Receiver on FTC, the Defendants and their respective counsel.

    I.     All rents, issues, profits, revenues, income or other payments which are now or hereafter become due (hereinafter collectively the "Rentals/Profits") with respect to all or any portion of the Real Property, for use or occupancy of any part of the Real Property, shall be remitted by the tenants and/or other indebted parties of the Real Property directly to the Receiver, for the benefit of the FTC.

    J.     The Defendants shall use their best efforts to ensure a smooth transition of the management and operation of the Property to the Receiver and the Defendants shall cooperate with the Receiver in effectuating such transition.

17

K.    The Defendants shall cause existing insurance coverage for the Real Property, if any, to remain in force until the expiration of the current paid up term under such policy or policies and shall notify the insurance carrier(s) immediately of the appointment of the Receiver and request that the Receiver and the FTC be added to the insurance policy or policies as an additional insureds thereunder. Upon the expiration of the paid portion of such policy or policies, the Receiver shall have the responsibility for keeping the Property insured and may as an option keep in force the existing insurance coverage(s) or obtain new coverage(s) for the Property, each of which such coverage(s) shall name FTC and the Receiver as additional insured's thereunder.

L.    The Defendants and their agents, employees or other representatives are enjoined from interfering in any manner with the Receiver's management and operation of the Real Property and the Defendants and their agents, employees or other representatives are enjoined and restrained from collecting any rents or profits which are now or hereafter become due with respect to all or any portion of the Real Property and from interfering in any way with FTC's or the Receiver's collection of such Rentals/Profits.

M.    The Receiver shall not be bound by all or any contracts, agreements, understandings or other commitments the Defendants had, have or may have with third parties, whether oral or written, and the Receiver shall be authorized, by affirmative written ratification executed by the Receiver, to agree to become bound by any such contracts, agreements, understandings or other commitments, or may agree to enter into new or amended contracts, agreements, understandings or other commitments.

N.    As soon as reasonably possible, the Receiver shall, at reasonable cost and in a commercially reasonable fashion, liquidate the Personal Property and Real Property. After all the

18

property has been liquidated, the Receiver shall account for the net proceeds derived by disposition of the same to the FTC.

O.    The Receiver is entitled to reasonable compensation for the performance of his duties pursuant to this Order as follows:

1.    Two percent (2%) of the total dollars recovered from the sale of the bank stock and oil and gas limited partnership interests described in Paragraph VI.A. above;

2.    Two percent (2%) of the total dollars recovered from the sale of the real property described in Paragraph VI.B. above;

3.    $600 per month for the purpose of maintaining an escrow account and performing the reporting duties required by this Order. This amount shall be in addition to the amounts provided for in Subparagraphs 1 and 2 above. Provided, however, that if all the real property described in Paragraph VI.B. above is disposed of within one year from the date the last of such properties is transferred to the Receiver, then the Receiver shall credit all amounts charged pursuant to this Subparagraph back to the Commission when determining his final compensation.

4.    The Receiver's compensation and the compensation of any persons hired by him pursuant to Subparagraphs E and F, above, is to be paid solely from the proceeds of the sale of the Property, and such payments shall have priority over all other distributions from Liquidation Assets except for any transfer fees, recording fees, or other payments owed through the transfer of the Property at the time of their sale; and

P.    Upon the final transfer of funds to the Commission pursuant to this Paragraph and Paragraph IV, the duties of the Liquidation Receiver shall terminate.

## VII. MONITORING

**IT IS FURTHER ORDERED** that, for the purpose of monitoring and investigating compliance with any provision of this Order:

A.      Within ten (10) days of receipt of written notice from a representative of the Commission, Defendants shall submit additional written reports, sworn to under penalty of perjury; produce documents for inspection and copying; appear for deposition; and/or provide entry during normal business hours to any business location in Defendants' possession or direct or indirect control.

B.      In addition, the Commission is authorized to monitor compliance with this Order by all other lawful means, including but not limited to the following:

1.      obtaining discovery from any person, without further leave of court, using the procedures prescribed by Fed. R. Civ. P. 30, 31, 33, 34, 35 and 45;

2.      posing as consumers and suppliers to: Defendants, their employees, or any other entity managed or controlled in whole or in part by any Defendant without the necessity of identification or prior notice.

C.      Defendants shall permit representatives of the Commission to interview any employer, consultant, independent contractor, representative, agent, or employee who has agreed to such an interview, relating in any way to any conduct subject to this Order. The person interviewed may have counsel present.

*Provided, however,* that nothing in this Order shall limit the Commission's lawful use of compulsory process, pursuant to Sections 9 and 20 of the FTC Act, 15 U.S.C. §§ 49, 57b-1, to obtain any documentary material, tangible things, testimony, or information relevant to unfair or deceptive acts or practices in or affecting commerce (within the meaning of 15 U.S.C. § 45(a)(1)).

## VIII. COMPLIANCE REPORTING BY DEFENDANTS

**IT IS FURTHER ORDERED** that, in order that compliance with the provisions of this Order may be monitored:

A.    For a period of five (5) years from the date of entry of this Order, Defendants shall notify the Commission in writing of the following:

1.    Any changes in an Individual Defendant's residence, mailing address and telephone number, within ten (10) days of the date of such change;

2.    Any changes in an Individual Defendant's employment status (including self-employment), within ten (10) days of such change. Such notice shall include the name and address of each business that the Individual Defendant is affiliated with, employed by, or performs services for; a statement of the nature of the business; and a statement of the Individual Defendant's duties and responsibilities in connection with the business;

3.    Any changes in any Defendant's name, and any alias or fictitious name adopted or used by any Defendant; and

4.    Any changes in the corporate structure of any business entity that any Defendant directly or indirectly controls, or has a majority ownership interest in, that may affect compliance obligations arising under this Order, including, but not limited to, a dissolution, assignment, sale, merger, or other action that would result in the emergence of a successor corporation; the creation or dissolution of a subsidiary, parent, or affiliate that engages in any acts or practices subject to this Order; the filing of a bankruptcy petition; or a change in the corporate name or address, at least thirty (30) days prior to such change, *provided, however,* that with respect to any proposed change in the corporation about which a Defendant learns less than thirty (30) days

prior to the date such action is to take place, the Defendant shall notify the Commission as soon as is practicable after obtaining such knowledge.

B. One hundred eighty (180) days after the date of entry of this Order, and each year thereafter on the same date, through and including calendar year 2012, Defendants shall provide a written report to the FTC, sworn to under penalty of perjury, setting forth in detail the manner and form in which they have complied and are complying with this Order. This report shall include, but not be limited to:

1. The then-current residence address, mailing addresses, and telephone numbers of each Individual Defendant;

2. The then-current employment and business addresses and telephone numbers of Defendants, a description of the business activities of each such employer or business, and the title and responsibilities of each Individual Defendant for each such employer or business;

3. Any other changes required to be reported under Paragraph VIII.A. of this Order; and

4. A copy of each acknowledgment of receipt of this Order obtained by Defendants pursuant to Paragraph X of this Order.

C. For the purposes of this Order, Defendants shall, unless otherwise directed by the Commission's authorized representatives, mail all written notifications to the FTC to:

> Associate Director
> Division of Enforcement
> Federal Trade Commission
> 600 Pennsylvania Ave., NW
> Washington, DC 20580
>
> Re: FTC v. Davison & Associates, Inc..
>       Civil Action No. 97-1278 (W.D. Pennsylvania)

22

D.     For the purposes of this Paragraph VIII, "employment" includes the performance of services as an employee, consultant, or independent contractor; and "employers" include any individual or entity for whom a Defendant performs services as an employee, consultant, or independent contractor.

E.     For purposes of the compliance reporting required by this Paragraph VIII, the Commission is authorized to communicate directly with Defendants.

## IX.   RECORD-KEEPING PROVISIONS

IT IS FURTHER ORDERED that, for a period of eight (8) years from the date of entry of this Order, in connection with any business that any Defendant directly or indirectly manages, controls or has a majority ownership interest in, Defendants are hereby permanently restrained and enjoined from failing to create and retain the following records:

A.     Accounting records that reflect the cost of goods or services sold, revenues generated, and the disbursement of such revenues;

B.     Personnel records accurately reflecting: the name, address, and telephone number of each person employed in any capacity by such business, including as an independent contractor; that person's job title or position; the date upon which the person commenced work; and the date and reason for the person's termination, if applicable;

C.     Customer files containing the names, addresses, phone numbers, dollar amounts paid, quantity of items or services purchased, and description of items or services purchased, to the extent such information is obtained in the ordinary course of business;

D.     Complaints concerning any conduct covered by this Order and refund requests (whether received directly, indirectly or through any third party) and any responses to those complaints or requests;

23

E.     Copies of all sales scripts, training materials, advertisements, or other marketing materials disseminated by any Defendant to any person, including e-mail and Internet web sites or web pages, relating to any good, service, company or web site of any Defendant; and

F.     All records and documents necessary to demonstrate fully Defendants' compliance with each provision of this Order.

## X.     DISTRIBUTION OF ORDER BY DEFENDANTS

**IT IS FURTHER ORDERED** that, for a period of five (5) years from the date of entry of this Final Order, Defendants shall deliver copies of this Order as directed below:

A.     **Corporate Defendants:** Corporate Defendants shall deliver a copy of this Order to all of their principals, officers, directors, and managers. Corporate Defendants also shall deliver a copy of this Order to all of their employees, agents, and representatives who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within (5) days of service of this Order upon Corporate Defendants. For new personnel, delivery shall occur prior to them assuming their responsibilities;

B.     **Individual Defendants as Control Persons:** For any business related to the development of inventions and/or new products or to the conduct that is the subject matter of this Order that any Individual Defendant controls, directly or indirectly, or in which he has a majority ownership interest, that Individual Defendant must deliver a copy of this Order to all principals, officers, directors and managers of that business. The Individual Defendant must also deliver copies of this Order to all employees, agents and representatives of that business who engage in conduct related to the subject matter of the Order. For current personnel, delivery shall be within five (5) days of service of this Order upon Individual Defendant. For new personnel, delivery shall occur prior to their assumption of their responsibilities;

C. **Individual Defendants as Employees or Non-Control Persons**: For any business where an Individual Defendant is not a controlling person of the business, but for which he otherwise engages in conduct related to the subject matter of this Order, that Individual Defendant must deliver a copy of this Order to all principals and managers of such business before engaging in such conduct; and

D. Defendants must secure a signed and dated statement acknowledging receipt of this Order within thirty (30) days of delivery, from all persons receiving a copy of this Order pursuant to this Paragraph X.

## XI. ACKNOWLEDGMENT OF RECEIPT OF ORDER

**IT IS FURTHER ORDERED** that, within five (5) business days of receipt of this Order as entered by the Court, Defendants shall each submit to the Commission a truthful sworn statement acknowledging receipt of this Order.

## XII. COSTS AND ATTORNEYS' FEES

**IT IS FURTHER ORDERED** that each party to this Order shall bear its own costs and attorneys' fees incurred in connection with this action; provided however, that in the event the Commission initiates proceedings to enforce the provisions of this Order and the Court determines that any Defendant has violated any term of this Order, the offending Defendant shall jointly pay reasonable costs and attorneys fees incurred by the Commission in connection with the proceedings to enforce this Order.

## XIII. VACATION OF PREVIOUS ORDERS

**IT IS FURTHER ORDERED** that this Consent Order for Permanent Injunction supersedes all other orders of this Court and that this Court's Order of Final Judgment dated March 17, 2006

(Document #246), Order for Permanent Injunction dated March 17, 2006 (Document #245) and Order of May 18, 2006 (Document #260) are vacated.

## XIV. JURISDICTION

**IT IS FURTHER ORDERED** that jurisdiction is retained by this Court for the purpose of enabling the parties to apply at any time for further orders and directions as may be necessary or appropriate for the interpretation or modification of this Order, for the enforcement or compliance thereof, or for the punishment of violations thereof. The Clerk of Court shall mark the instant case administratively closed.

**STIPULATED AND AGREED TO:**

DAVISON DESIGN & DEVELOPMENT, INC.,
formerly Davison & Associates, Inc.

GEORGE M. DAVISON III, President

Dated: 3/3/08

GORDON M. DAVISON, individually

GORDON M. DAVISON

Dated: 3/3/08

MANUFACTURER'S SUPPORT SERVICES, INC.

GORDON M. DAVISON, President

Dated: 3/3/08

BARBRA M. DAVISON, individually

BARBRA M. DAVISON

Dated: 3-3-08

GEORGE M. DAVISON III, individually

GEORGE M. DAVISON III

Dated: 3/3/08

BARBARA L. DAVISON, individually

BARBARA L. DAVISON

Dated: 3/3/08

26

**GEORGE H. CROMPTON, ESQ.**
Attorney for Defendants

*GEORGE H. CROMPTON*

*Dated:* 3/4/2008

**FEDERAL TRADE COMMISSION:**

**STEVEN W. BALSTER,** Attorney for Plaintiff

*Dated:* 6/3/08

**MICHAEL MILGROM,** Attorney for Plaintiff

*Dated:* 6/3/08

**SO ORDERED,** this ____ day of ____, 2008.

**GARY L. LANCASTER**
United States District Judge

27